*In re* FUNDACIÓN FACULTAD DE DERECHO EUGENIO MARÍA DE HOSTOS, PETICIONARIA.

*Número:* MC-96-25          *Resuelto:* 13 de agosto de 1997

*Rafael Alonso Alonso, Liana Fiol Matta* y *José Alberto Morales*, en informe; *José A. Cuevas Segarra*, abogado de la Facultad Eugenio María De Hostos.

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Puerto Rico ciertamente tiene necesidad, o carece, de muchas cosas. A manera de ejemplo, se nos ocurre que nuestra bella isla tiene una necesidad apremiante, entre otras: de nuevas y mayores represas que suplan agua a nuestros conciudadanos; de un sistema de justicia compuesto por dedicados funcionarios judiciales que impartan justicia en una forma rápida, eficiente y equitativa; de un sistema educativo público donde nuestros hijos puedan recibir una educación de excelencia que los prepare para enfrentarse a los difíciles retos que les esperan en su vida futura; de un sistema de salud donde todos recibamos la atención y el cuido necesario y adecuado sin que el mismo dependa de si tenemos, o no, el dinero para pagarlo; de un sistema de seguridad pública que nos permita caminar por las calles de nuestro país, y dormir en nuestras casas, con la tranquilidad y seguridad que merecemos. En fin, los puertorriqueños tenemos una necesidad apremiante de una mejor calidad de vida.

Sin embargo, una de las cosas que Puerto Rico ciertamente *no* necesita son escuelas de derecho que no satisfagan los requisitos básicos necesarios para garantizar, en lo posible, que sus egresados sean profesionales capaces de asesorar competentemente a los ciudadanos de este país.

A esos efectos, es preciso recordar que este Tribunal tiene la facultad inherente de reglamentar, entre otros, la admisión al ejercicio de la abogacía. *In re Añeses*, 117 D.P.R. 134, 135 (1986); *In re Freytes Mont*, 117 D.P.R. 11, 13 (1986); *Colegio de Abogados de P.R. v. Schneider*, 112 D.P.R. 540, 546 (1982); *Warner Lambert v. F.S.E.*, 111 D.P.R. 842, 846 (1982); *In re Liceaga*, 82 D.P.R. 252, 255 (1961); *In re Pagán*, 71 D.P.R. 761, 763 (1950); *In re Bosch*, 65 D.P.R. 248, 251 (1945); *Ex parte Jiménez*, 55 D.P.R. 54 (1939).

Conforme a dicho poder inherente y con relación al establecimiento de escuelas de derecho, este Tribunal tiene la obligación ineludible de velar, en primer lugar, por que los ciudadanos de nuestra isla que interesan estudiar la carrera de Derecho reúnan unos requisitos mínimos y estudien su carrera jurídica en instituciones de enseñanza idóneas para ello. Esto es, tenemos la obligación de evitar que los estudiantes pierdan su tiempo y energía al cursar estudios jurídicos en instituciones que no cumplen con ciertos mínimos preestablecidos y que no hayan sido acreditadas por los organismos correspondientes.

Tenemos, además, una obligación muy seria para con la sociedad, la cual consiste de asegurarnos, en la medida en que ello sea posible, que las personas a quienes autorizamos a ejercer la profesión estén plenamente capacitadas para practicar la abogacía, profesión que "distinto quizás a otras profesiones, conlleva una seria y delicada función ciudadana pues la misma representa servicio, ética y ejemplo". *Ramos Acevedo v. Tribunal Superior*, 133 D.P.R. 599, 613 (1993).

En el día de hoy este Tribunal, por medio de una poco juiciosa, errónea y desatinada decisión mayoritaria, permite que tomen el próximo examen de reválida un grupo de aspirantes que provienen de una escuela de derecho que no cualifica como tal bajo ninguno de los criterios aplicables y pertinentes.

*No* podemos, en conciencia, dar nuestra conformidad a tan erróneo proceder. Veamos.

I

La Sec. 1(3) de la Ley Núm. 17 de 10 de junio de 1939, según enmendada, 4 L.P.R.A. sec. 721(3), establece, *como uno de los requisitos para ser admitido a la práctica de la profesión*, que el aspirante deberá:

(3) Haberse recibido de abogado en una universidad aprobada por la *American Bar Association* y por la Corte Suprema

de Puerto Rico; Disponiéndose, sin embargo, que cuando el aspirante se hubiere graduado de abogado en una universidad extranjera, se faculta a la Corte Suprema de Puerto Rico para que, en uso de sus [sic] discreción, determine si dicha universidad cumple con el equivalente de los requisitos que se exigen de las universidades aprobadas por la *American Bar Association*, único caso en el cual se considerará suficiente el diploma así recibido; Disponiéndose, además, que a los efectos de este inciso el Colegio de Derecho de la Universidad de Puerto Rico se considerará como aprobado por la *American Bar Association*.

Por otro lado, la Sec. 2(2) del Reglamento de la Junta Examinadora de Aspirantes al Ejercicio de la Abogacía, 4 L.P.R.A. Ap. VII-B, establece como requisito para ser admitido a tomar el examen de reválida, en lo pertinente:

(2) Haber cursado estudios de Derecho, obtenido y aprobado el grado correspondiente al título de abogado en una escuela de Derecho acreditada por el Consejo de Educación Superior y por el Tribunal Supremo de Puerto Rico, si cursó sus estudios de Derecho en Puerto Rico, o por la *American Bar Association* y por el Tribunal Supremo de Puerto Rico, si cursó sus estudios de Derecho fuera de Puerto Rico.

A pesar de que las anteriormente citadas disposiciones están en aparente contradicción, es preciso resaltar que ambas coinciden al exigir que quien desee ser admitido al ejercicio de la abogacía debe haber cursado estudios en una escuela de derecho acreditada o aprobada, *al menos*, por el Tribunal Supremo de Puerto Rico.([1])

Ese, ciertamente, *no* es el caso de la Fundación Facultad de Derecho Eugenio María De Hostos. Tal y como reconoce la mayoría de este Tribunal en la resolución emitida en el día de hoy, dicha institución no ha sido acreditada ni por la

---

([1]) No es necesario entrar de lleno a discutir las consecuencias de la contradicción existente entre las disposiciones de la Sec. 1(3) de la Ley Núm. 17 de 10 de junio de 1939, según enmendada, 4 L.P.R.A. sec. 721(3), y la Sec. 2 del Reglamento de la Junta Examinadora de Aspirantes al Ejercicio de la Abogacía, 4 L.P.R.A. Ap. VII-B. Esto, ya que en virtud del poder inherente de este Tribunal para reglamentar la admisión y separación del ejercicio de la abogacía, la referida Ley Núm. 17 es puramente directiva y no mandatoria para este Tribunal. *Colegio de Abogados de P.R. v. Schneider*, 112 D.P.R. 540, 546 (1982); *In re Pagán*, 71 D.P.R. 761, 763 (1950); *In re Abella*, 67 D.P.R. 229, 239 (1947); *In re Bosch*, 65 D.P.R. 248, 251 (1945); *Ex parte Jiménez*, 55 D.P.R. 54 (1939).

*American Bar Association* como tampoco por este Tribunal. De hecho, en la misma resolución (emitida en el caso de autos), págs. 822–823, la mayoría reconoce que el Comité de Acreditación de la *American Bar Association* evaluó desfavorablemente a dicha escuela y que el Comité de Acreditación nombrado por este Tribunal no recomendó como tal la acreditación de la misma.

Los informes rendidos por ambos Comités de Acreditación coinciden en que la referida institución académica atraviesa una *grave situación financiera.* De igual manera, les preocupa la inadecuacidad de la planta física donde ubica la institución, la deficiencia de los recursos bibliotecarios y la pobre calidad del estudiantado. Tan pobre evaluación en ámbitos tan cruciales como éstos para la calidad de la educación ofrecida resulta, cuando menos, altamente preocupante.

A nuestra manera de ver las cosas, las recomendaciones emitidas por ambos Comités de Acreditación, unido al hecho innegable de que dicha institución aún no ha sido acreditada ni siquiera por este Tribunal, hacen *totalmente impermisible e inapropiada* la admisión a reválida de los egresados de la referida escuela de derecho.

El poder inherente de reglamentar la profesión, que ciertamente poseemos, tiene que ser ejercitado por este Tribunal no sólo de manera juiciosa y correcta, sino que el mismo tiene que ser ejercitado, *en lo posible*, dentro de los parámetros de nuestro ordenamiento jurídico. Nuestro poder inherente no constituye una carta blanca para decidir arbitrariamente cuándo aplicaremos, y cuándo no, las leyes y nuestros propios reglamentos al efecto. La actuación mayoritaria en el presente asunto constituye una desviación crasa del procedimiento establecido para reglamentar la admisión al ejercicio de la abogacía. La misma, nos causa pena decirlo, resulta patentemente arbitraria y poco juiciosa.

No alcanzamos a comprender la "sabiduría" de un "dictamen exclusivo, de naturaleza excepcional, [el cual] no constituye un precedente de clase alguna [que] forma parte

de un proceso de evaluación y acreditación". Resolución del Tribunal, pág. 835. ¿Desde cuándo permitimos a los egresados de una escuela de derecho, *aun no acreditada,* tomar el examen de reválida como parte del proceso de acreditación de la misma?

Tampoco alcanzamos a entender cuáles son las circunstancias extraordinarias que ameritan apartarnos de los requisitos establecidos por este Tribunal para admitir abogados a la práctica, máxime cuando a la luz de los hechos ante nuestra consideración, la Fundación Facultad de Derecho Eugenio María De Hostos no cumple con ninguno de los requisitos necesarios para otorgar nuestra acreditación.

Hoy cobran mayor vigencia las expresiones hechas por el Honorable Juez Asociado de este Tribunal Señor Blanco Lugo en el voto explicativo que emitiera en *In re Calderón Lassén,* 88 D.P.R. 931, 939–940 (1963), a los efectos de que:

> ... Una simple lectura de ambos documentos demuestra que hay hechos incontrovertidos que militan en contra de la acreditación *en estos momentos.* Pretender sostener lo contrario es elevar la condescendencia a la categoría de dogma.
>
> Es por eso que, utilizando el criterio de valores que inalterablemente he aplicado en mis actuaciones judiciales, *independientemente de la identidad de las personas interesadas o las entidades afectadas,* no puedo concurrir con el precedente sentado por los cinco compañeros de la mayoría, que presagia un deterioro en la calidad de la educación legal en Puerto Rico. (Énfasis suplido y en el original.)

No perdamos de vista que albergamos la ineludible responsabilidad de tomar con seriedad las decisiones que puedan afectar la calidad de los servicios prestados por los miembros de la clase togada del País. No podemos recalcar lo suficiente el hecho de que cada vez que este Tribunal autoriza a una persona a practicar la profesión de la abogacía en nuestra jurisdicción, está garantizando a la ciudadanía que dicha persona está capacitada para asesorarla legalmente. Esa es una seria responsabilidad que tenemos. *No* estamos en disposición de ejercitar la misma ligeramente; es por ello que disentimos.